# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| REYNOLDS INNOVATIONS INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| vs. | ) | Civil Action No. 1:13-cv-313 |
| | ) | |
| JUICY VAPOR, LLC, BRADLEY | ) | |
| MCNAMARA, individually, and | ) | |
| ANTHONY BRANCATO, individually, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## COMPLAINT

Plaintiff Reynolds Innovations Inc. ("RII") states the following for its Complaint against Defendants Juicy Vapor, LLC, Brad McNamara, and Anthony Brancato (collectively "Defendants"):

## NATURE OF THE ACTION

1.     This is an action at law and in equity for trademark infringement, unfair competition and false designation of origin, and trademark dilution arising under sections 32 and 43 of the Federal Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. §§ 1114, 1125; unfair or deceptive trade practices arising under N.C. Gen. Stat. §§ 75-1 *et seq.*; deceptive acts and trade practices arising under N.Y. Gen. Bus. Law § 349; New York trademark dilution under N.Y. Gen. Bus. Law § 360; and trademark infringement and unfair competition arising under the common law of the States of North Carolina and

1

New York.

2.     As more fully described below, without RII's authorization, Defendants have used and continue to use trademarks that are colorable imitations of, and are confusingly similar to, RII's federally-registered CAMEL and LUCKY STRIKE trademarks in connection with the sale of Defendants' liquid nicotine products via the Internet.  On information and belief, Defendants have been and continue to be engaged in the business of operating Internet websites, including those displayed at <www.juicyvapor.com> ("Defendants' Website") through which Defendants actively promote and sell, among other items, flavored liquid nicotine products for use with electronic cigarettes.

3.     On information and belief, without RII's authorization, Defendants have used RII's famous and federally-registered CAMEL and LUCKY STRIKE trademarks, or colorable imitations thereof, examples of which are shown below:

***From Defendants' Website***







4.    In addition to using RII's trademarks in their promotional materials, Defendants' actual products also bear the famous CAMEL and LUCKY STRIKE trademarks, or colorable imitations thereof,  as shown below:

  

3

5.    RII has not authorized or permitted Defendants to use its CAMEL and LUCKY STRIKE trademarks, or colorable imitations thereof, in connection with Defendants' products. Unless enjoined by this Court, Defendants' conduct will continue to result in a likelihood of consumer confusion and irreparable injury to RII.

## PARTIES, JURISDICTION AND VENUE

6.    RII is a corporation organized and existing under the laws of the State of North Carolina, with its principal place of business at 401 North Main Street, Winston-Salem, North Carolina. RII is a trademark holding company and a subsidiary of R.J. Reynolds Tobacco Company. RII is therefore the record owner, in its own right or by assignment from its predecessors-in-interest, of the CAMEL and LUCKY STRIKE trademarks that are at issue in this dispute, including the federal trademark registrations that are identified below. For convenience, and unless the context indicates otherwise, the term "Reynolds" will be used to refer collectively to RII, RII's predecessors-in-interest and/or RII's corporate affiliates who use the trademarks owned by RII under authority from RII.

7.    On information and belief, Defendant Juicy Vapor, LLC ("Juicy Vapor") is a limited liability company organized under the laws of the State of New York with an address at 37 John Glenn Drive, Amherst, New York, 14228.

8.    On information and belief, Defendant Bradley McNamara ("Mr. McNamara") is a resident of New York with an address of 35 Division Street, North

4

Tonawanda, New York, 14120.  On further information and belief, Mr. McNamara is an owner and operator of Juicy Vapor, LLC and, together with Defendant Anthony Brancato, directs and controls the business activities of Juicy Vapor, LLC, including but not limited to the ownership and operation of Defendants' Website.

9.      On information and belief, Defendant Anthony Brancato ("Mr. Brancato") is a resident of New York with an address of 48 Mildred Drive, Buffalo, New York, 14225.  On further information and belief, Mr. Brancato is an owner and operator of Juicy Vapor, LLC and, together with Mr. McNamara, directs and controls the business activities of Juicy Vapor, LLC, including but not limited to the ownership and operation of Defendants' Website.

10.      This Court has subject matter jurisdiction over the federal claims alleged herein pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1332, and 1338.  As to the state law claims, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1338(b), and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

11.      This Court has personal jurisdiction over Defendants because the infringing products that Defendants offer and make available to purchasers at Defendants' Website are capable of being ordered, and have been ordered, by purchasers in North Carolina and within this judicial district, and are capable of being shipped, and have been shipped, to purchasers in North Carolina and within this judicial district.

12.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), in that, on information and belief, a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

13.     This Court has jurisdiction to enter injunctive relief, pursuant to 15 U.S.C. § 1116 and Fed. R. Civ. P. 65.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

14.     The allegations of the foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

15.     At all times material hereto, Reynolds has been, and currently is still, engaged in the business of manufacturing, distributing, marketing, advertising, offering for sale, and selling various types of tobacco products throughout the United States under multiple trademarks owned by RII and under authority from RII.  As more fully described below, RII's famous CAMEL and Camel Design trademarks (collectively the ("CAMEL Marks"), and the famous LUCKY STRIKE trademarks (the "LUCKY Marks") are registered on the Principal Register of the United States Patent and Trademark Office ("USPTO") and are used in connection with the sale of cigarettes, among other things.

## CAMEL Marks

16.     Beginning at least as early as 1901, Reynolds adopted and began using the distinctive designation CAMEL in interstate commerce for the purpose of identifying and distinguishing Reynolds's tobacco products from the products of other manufacturers and

6

distributors of tobacco. Reynolds has advertised, marketed, distributed, offered for sale, and sold its products under the CAMEL Marks continuously for more than a century.

17. On September 30, 1919, RII's predecessor-in-interest was granted U.S. Trademark Registration No. 126,760 for the trademark CAMEL, in stylized form as shown below, on the USPTO's Principal Register for use in connection with "cigarettes" (the "'760 Registration").

# CAMEL

The '760 Registration, which RII duly acquired by assignment from its predecessors-in-interest, has become incontestable by virtue of long and continuous use and pursuant to the provisions of 15 U.S.C. § 1065. The '760 Registration therefore constitutes conclusive evidence of the validity of the mark shown therein and of the registration of said mark, of RII's ownership of said mark, and of RII's exclusive right to use said mark in commerce in connection with "cigarettes." A true and accurate copy of the Certificate of Registration for the '760 Registration, together with USPTO assignment records reflecting RII's ownership of the '760 Registration, is attached hereto as Exhibit 1.

18. On January 13, 1976, RII's predecessor-in-interest was granted U.S. Trademark Registration No. 1,030,232 for the Camel Design trademark, shown below, on the USPTO's Principal Register for use in connection with "cigarettes" (the "'232 Registration").



The '232 Registration, which RII duly acquired by assignment from its predecessors-in-interest, has become incontestable by virtue of long and continuous use and pursuant to the provisions of 15 U.S.C. § 1065. The '232 Registration therefore constitutes conclusive evidence of the validity of the mark shown therein and of the registration of said mark, of RII's ownership of said mark, and of RII's exclusive right to use said mark in commerce in connection with "cigarettes." A true and accurate copy of the Certificate of Registration for the '232 Registration, together with USPTO assignment records reflecting RII's ownership of the '232 Registration, is attached hereto as Exhibit 2.

19.     On April 29, 1986, RII's predecessor-in-interest was granted U.S. Trademark Registration No. 1,391,824 for the trademark CAMEL & Design, shown below, on the USPTO's Principal Register for use in connection with "cigarettes" (the "'824 Registration").



The '824 Registration, which RII duly acquired by assignment from its predecessors-in-interest, has become incontestable by virtue of long and continuous use and pursuant to

8

the provisions of 15 U.S.C. § 1065. The '824 Registration therefore constitutes conclusive evidence of the validity of the mark shown therein and of the registration of said mark, of RII's ownership of said mark, and of RII's exclusive right to use said mark in commerce in connection with "cigarettes." A true and accurate copy of the Certificate of Registration for the '824 Registration, together with USPTO assignment records reflecting RII's ownership of the '824 Registration, is attached hereto as Exhibit 3.

20.     On February 20, 2007, RII's predecessor-in-interest was granted U.S. Trademark Registration No. 3,211,464 for the trademark CAMEL, in standard characters, on the USPTO's Principal Register for use in connection with "snuff, namely snus" (the "'464 Registration"). The '464 Registration, which RII duly acquired by assignment from its predecessors-in-interest, has become incontestable by virtue of long and continuous use and pursuant to the provisions of 15 U.S.C. § 1065. The '464 Registration therefore constitutes conclusive evidence of the validity of the mark shown therein and of the registration of said mark, of RII's ownership of said mark, and of RII's exclusive right to use said mark in commerce in connection with "snuff, namely snus." A true and accurate copy of the Certificate of Registration for the '464 Registration, together with USPTO assignment records reflecting RII's ownership of the '464 Registration, is attached hereto as Exhibit 4.

21.     On March 31, 2009, RII was granted U.S. Trademark Registration No. 3,599,620 for the Camel Design trademark, shown below, on the USPTO's Principal Register for use in connection with "smokeless tobacco" (the "'620 Registration").

9



A true and accurate copy of the Certificate of Registration for the '620 Registration, together with USPTO assignment records reflecting RII's ownership of the '620 Registration, is attached hereto as Exhibit 5. (The '760, '232, '824, '464, and '620 Registrations are referred to collectively hereinafter as the "CAMEL Registrations," and the trademarks shown therein, and the common law equivalents of such trademarks, are hereinafter referred to as the "CAMEL Marks.")

22. RII owns, *inter alia*, the CAMEL Registrations, the CAMEL Marks and all the goodwill associated therewith in the United States. The CAMEL Registrations remain valid, subsisting, and uncancelled, and the '760, '232, '824 and '464 registrations have become incontestable as described above.

23. The CAMEL Marks are famous trademarks that are widely recognized by the general consuming public across the United States as a designation of the source of Reynolds's goods.

24. The CAMEL Marks inherently serve to distinguish Reynolds's tobacco products from those of others. The CAMEL Marks are recognized by the general consuming public as a designation of the source of Reynolds's products and, as a result of Reynolds's long and continuous use and promotion of the CAMEL Marks throughout the United States, consumers of tobacco products recognize the CAMEL Marks as symbols

of the highest quality of tobacco products, and associate and identify the CAMEL Marks with Reynolds or with a single source. Reynolds derives substantial goodwill and value from this identification by the consuming public and the trade.

<u>The LUCKY Marks</u>

25.     Beginning at least as early as January 1, 1883, Reynolds's predecessor-in-interest adopted and began using the distinctive designation LUCKY STRIKE in interstate commerce for the purpose of identifying and distinguishing its tobacco products from the products of other manufacturers and distributors of tobacco. Reynolds or its predecessors-in-interest has advertised, marketed, distributed, offered for sale, and sold its products under the LUCKY STRIKE mark continuously for more than one hundred (100) years.

26.     On September 4, 1917, RII's predecessor-in-interest was granted U.S. Trademark Registration No. 118,372 for the trademark LUCKY STRIKE on the USPTO's Principal Register for use in connection with "cigarettes" (the "'372 Registration"). Reynolds has used this LUCKY STRIKE mark in interstate commerce in connection with cigarettes since at least January 1, 1883. The '372 Registration, which RII duly acquired by assignment from its predecessors-in-interest, has become incontestable by virtue of long and continuous use and pursuant to the provisions of 15 U.S.C. § 1065. The '372 Registration therefore constitutes conclusive evidence of the validity of the mark shown therein and of the registration of said mark, of RII's ownership of said mark, and of RII's exclusive right to use said mark in commerce in

11

connection with "cigarettes."  A true and accurate copy of the Certificate of Registration for the '372 Registration, together with USPTO assignment records reflecting RII's ownership of the '372 Registration, is attached hereto as Exhibit 6.

27.     On May 26, 1936, RII's predecessor-in-interest was granted U.S. Trademark Registration No. 335,113 for the trademark LUCKIES & Design, depicted below, on the USPTO's Principal Register for use in connection with "cigarettes" (the "'113 Registration").  Reynolds has used this LUCKY STRIKE mark in interstate commerce in connection with cigarettes since at least June 1926.



The '113 Registration, which RII duly acquired by assignment from its predecessors-in-interest, has become incontestable by virtue of long and continuous use and pursuant to the provisions of 15 U.S.C. § 1065.  The '113 Registration therefore constitutes conclusive evidence of the validity of the mark shown therein and of the registration of said mark, of RII's ownership of said mark, and of RII's exclusive right to use said mark in commerce in connection with "cigarettes."  A true and accurate copy of the Certificate of Registration for the '113 Registration, together with USPTO assignment records reflecting RII's ownership of the '113 Registration, is attached hereto as Exhibit 7.

28.     On April 25, 1939, RII's predecessor-in-interest was granted U.S. Trademark Registration No. 366,744 for the trademark LUCKY STRIKE & Design,

12

depicted below, on the USPTO's Principal Register for use in connection with "cigarettes" (the "'744 Registration").  Reynolds has used this LUCKY STRIKE mark in interstate commerce in connection with cigarettes since at least June 1926.



The '744 Registration, which RII duly acquired by assignment from its predecessors-in-interest, has become incontestable by virtue of long and continuous use and pursuant to the provisions of 15 U.S.C. § 1065.  The '744 Registration therefore constitutes conclusive evidence of the validity of the mark shown therein and of the registration of said mark, of RII's ownership of said mark, and of RII's exclusive right to use said mark in commerce in connection with "cigarettes."  A true and accurate copy of the Certificate of Registration for the '744 Registration, together with USPTO assignment records reflecting RII's ownership of the '744 Registration, is attached hereto as Exhibit 8.

29.     On November 16, 1943, RII's predecessor-in-interest was granted U.S. Trademark Registration No. 404,302 for the trademark LUCKY STRIKE & Design, depicted below, on the USPTO's Principal Register for use in connection with "cigarettes" (the "'302 Registration").  Reynolds has used this LUCKY STRIKE mark in interstate commerce in connection with cigarettes since at least June 1926.

13



The '302 Registration, which RII duly acquired by assignment from its predecessors-in-interest, has become incontestable by virtue of long and continuous use and pursuant to the provisions of 15 U.S.C. § 1065. The '302 Registration therefore constitutes conclusive evidence of the validity of the mark shown therein and of the registration of said mark, of RII's ownership of said mark, and of RII's exclusive right to use said mark in commerce in connection with "cigarettes." A true and accurate copy of the Certificate of Registration for the '302 Registration, together with USPTO assignment records reflecting RII's ownership of the '302 Registration, is attached hereto as Exhibit 9. (The '372, '113, '744, and '302 Registrations are referred to collectively hereinafter as the "LUCKY Registrations," and the trademarks shown therein, and the common law equivalents of such trademarks, are hereinafter referred to as the "LUCKY Marks.")

30.     RII owns, *inter alia*, the LUCKY Registrations, the LUCKY Marks, and all the goodwill associated therewith in the United States. The LUCKY Registrations remain valid, subsisting, and uncancelled, and have become incontestable as described above.

14

31.     The LUCKY Marks are famous trademarks that are widely recognized by the general consuming public across the United States as a designation of the source of Reynolds's goods.

32.     The LUCKY Marks inherently serve to distinguish Reynolds's tobacco products from those of others.  The LUCKY Marks are recognized by the general consuming public as a designation of the source of Reynolds's products and, as a result of Reynolds's long and continuous use and promotion of the LUCKY Marks throughout the United States, consumers of tobacco products recognize the LUCKY Marks as symbols of the highest quality of tobacco products, and associate and identify the LUCKY Marks with Reynolds or with a single source.  Reynolds derives substantial goodwill and value from this identification by the consuming public and the trade.

### Defendants' Unlawful Acts

33.     On information and belief, Defendants have advertised and offered for sale products under the:

    a.  CAMEL Marks, or marks that are confusingly similar to the CAMEL Marks; and

    b.  LUCKY Marks, or marks that are confusingly similar to the LUCKY Marks.

34.     On information and belief, Defendants operate Defendants' Website at <www.juicyvapor.com>.  On Defendants' Website, Defendants advertise and sell, among

other things, liquid nicotine products. Excerpts from Defendants' Website, as such contents existed as of April 16, 2013, are attached hereto as Exhibit 10.

35. On information and belief, Defendants have offered for sale, and continue to offer for sale, a product called "E-liquid" through Defendants' Website. On information and belief, E-liquid is a liquid nicotine product that is used in connection with electronic cigarettes. Defendants' E-liquid products are advertised or offered in several flavors and varieties.

36. On information and belief, Defendants have offered for sale and sold through Defendants' website various E-Liquid products advertised under and/or bearing the CAMEL Marks, or marks that are confusingly similar to the CAMEL Marks and the LUCKY Marks, or marks that are confusingly similar to the LUCKY Marks. *See* Exhibit 10. Hereinafter, these E-liquid nicotine products advertised, offered for sale, and sold by Defendants will be referred to as the "Infringing Products" or, if more specificity is required, the "Infringing CAMEL Products," or "Infringing LUCKY Products," as the case may be.

37. Upon information and belief, Defendants have sold and continue to sell Infringing Products through Defendants' Website to purchasers throughout the United States, including North Carolina.

38. Bottles of the Infringing CAMEL Products, as received by a purchaser in North Carolina who ordered the product identified on Defendants' Website as "Creamy Camels" and "Tobacco (Cam-EL)" E-liquid and advertised in conjunction with an image

of a camel, display the designations "Creamy Camels" and "Cam-EL Tobacco". Exhibit 11 includes true and correct printouts of photographs of Infringing CAMEL Products.

39.     A bottle of the Infringing LUCKY Product, as received by a purchaser in North Carolina who ordered the product identified on Defendants' Website as "Lucky No. 7," displays the designation "Lucky No. 7." Exhibit 12 includes a true and accurate print out of a photograph of an Infringing LUCKY Product.

40.     Reynolds did not and does not manufacture, distribute, market, offer for sale, or sell any liquid nicotine products, including E-liquid products, under the CAMEL Marks or LUCKY Marks.

41.     RII has not authorized, and does not authorize, Defendants' use of the CAMEL Marks, or colorable imitations thereof or the LUCKY Marks, or colorable imitations thereof in connection with the manufacture or sale of Defendants' E-liquid products or any other products of Defendants.

**FIRST CLAIM FOR RELIEF**
**(Infringement of Federally Registered Trademarks under 15 U.S.C. § 1114)**

42.     The allegations of the foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

43.     Defendants' unauthorized use of the CAMEL Marks and their sale of Infringing CAMEL Products are likely to cause confusion, mistake, or deception among consumers as to the source, origin, or sponsorship of such products. The consuming public is likely to believe that Defendants' Infringing CAMEL Products are products

authorized by RII for sale under the CAMEL Marks, partaking of the same qualities and characteristics as products bearing the CAMEL Marks, when such is not the case.

44.     By their unauthorized sale of the Infringing CAMEL Products, Defendants have infringed and continue to infringe the famous, registered, and incontestable CAMEL Marks, as shown in the CAMEL Registrations, in violation of § 32 of the Lanham Act, 15 U.S.C. § 1114.

45.     Defendants' unauthorized use of colorable imitations of the LUCKY Marks and their sale of Infringing LUCKY Products are likely to cause confusion, mistake, or deception among consumers as to the source, origin, or sponsorship of such products. The consuming public is likely to believe that Defendants' Infringing LUCKY Products are products authorized by RII for sale under the LUCKY Marks, partaking of the same qualities and characteristics as products bearing the LUCKY Marks, when such is not the case.

46.     By their unauthorized sale of the Infringing LUCKY Products, Defendants have infringed and continue to infringe the famous, registered, and incontestable LUCKY Marks, as shown in the LUCKY Registrations, in violation of § 32 of the Lanham Act, 15 U.S.C. § 1114.

47.     Defendants' unauthorized sale of the Infringing Products, and Defendants' unauthorized use of the CAMEL Marks and the LUCKY Marks, or colorable imitations of any of these above-listed marks owned by RII, in connection with the sale of such products, as alleged above, was intentionally done with a view and purpose of trading on

18

and benefiting from the substantial reputation and goodwill in the United States associated with the CAMEL Marks and the LUCKY Marks.

48. Defendants' acts of trademark infringement, as alleged herein, have injured RII in that RII has suffered damage to its reputation and customer goodwill as a direct and proximate result of Defendants' illegal conduct. In addition, Defendants have been unjustly enriched by reason of their trademark infringement in that they have achieved sales and profits, and the opportunity to earn future sales and profits, as a direct and proximate result of their illegal conduct.

49. Defendants' trademark infringement as alleged herein has caused, is causing, and will continue to cause irreparable and inherently unquantifiable injury and harm to RII's business, reputation, and goodwill, unless Defendants' unlawful conduct is enjoined by this Court.

50. RII is entitled to recover all damages sustained by Defendants' actions, all profits realized by Defendants through their infringing use of the CAMEL Marks and LUCKY Marks or colorable imitations thereof, in connection with the offering for sale and sale of liquid nicotine products, or related products, and the costs of this action.

51. Defendants' actions have been willful and deliberate, entitling RII to recover treble damages and/or profits and an award of reasonable attorneys' fees against Defendants.

## SECOND CLAIM FOR RELIEF
### (Federal Unfair Competition, False Representation, and
### False Designation of Origin under 15 U.S.C. § 1125(a))

52.     The allegations of the foregoing Paragraphs are repleaded and incorporated

by reference as if fully set forth herein.

53.     Defendants' unauthorized use of the CAMEL Marks and the LUCKY

Marks, or colorable imitations thereof, in connection with the sale of their E-liquid

products constitutes unfair competition, false representation, and false designation of

origin in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and is causing and,

unless enjoined by this Court, will continue to cause confusion, to cause mistake, or to

deceive purchasers and consumers as to the source, origin, or sponsorship of Defendants'

products.

54.     As a direct and proximate result of Defendants' unfair competition, false

representation, and false designation of origin as herein alleged, RII has suffered, and will

continue to suffer, irreparable damage and inherently unquantifiable injury and harm to

its business, reputation, and customer goodwill.  Defendants' unfair competition, false

representation, and false designation of origin has caused and will continue to cause RII

to lose sales to which it would otherwise be entitled, unless such unlawful conduct is

enjoined by this Court.

55.     RII is entitled to recover all damages sustained by Defendants' actions, all

profits realized by Defendants through their unauthorized use of the CAMEL Marks and

LUCKY Marks, or colorable imitations thereof, in connection with the offering for sale and sale of liquid nicotine products or related products, and the costs of this action.

56.     Defendants' actions have been willful and deliberate, entitling RII to recover treble damages and/or profits and an award of reasonable attorneys' fees against Defendants.

**THIRD CLAIM FOR RELIEF**
**(Dilution of Federally Registered Trademarks under 15 U.S.C. § 1125(c))**

57.     The allegations of the foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

58.     The CAMEL Marks are famous trademarks under 15 U.S.C. § 1125(c)(2)(A), in that they are widely recognized by the general consuming public of the United States as a designation of the source of Reynolds's goods.  The CAMEL Marks became famous long prior to Defendants' unlawful use of the CAMEL Marks, or colorable imitations thereof, as alleged herein.

59.     Defendants' use of the CAMEL Marks, or colorable imitations thereof, in connection with the unauthorized sale in the United States of their "Camel" E-liquid products is likely to dilute RII's famous CAMEL Marks, in violation of § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), by lessening their capacity to identify and distinguish Reynolds exclusively as the source of products in the United States bearing or provided under the famous CAMEL Marks.

21

60.     Defendants' unauthorized use of the CAMEL Marks in connection with the sale in the United States of their "Camel" E-liquid products is intended and has the effect of trading on Reynolds's reputation and causing dilution of the famous CAMEL Marks.

61.     Upon information and belief, Defendants do not own any federal or state registrations or trademark applications for any mark that includes, in whole or in part, any of the CAMEL Marks and cannot assert any rights in the CAMEL Marks that are prior to RII's first use, actual or constructive, of the CAMEL Marks.

62.     The LUCKY Marks are famous trademarks under 15 U.S.C. § 1125(c)(2)(A), in that they are widely recognized by the general consuming public of the United States as a designation of the source of Reynolds's goods.  The LUCKY Marks became famous long prior to Defendants' unlawful use of the LUCKY Marks, or colorable imitations thereof, as alleged herein.

63.     Defendants' use of the LUCKY Marks, or colorable imitations thereof, in connection with the unauthorized sale in the United States of Infringing LUCKY Products is likely to dilute RII's famous LUCKY Marks, in violation of § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), by lessening their capacity to identify and distinguish Reynolds exclusively as the source of products in the United States bearing or provided under the famous LUCKY Marks and by harming the reputation and goodwill of the famous LUCKY Marks.

64.     Defendants' unauthorized use of the CAMEL Marks and LUCKY Marks in connection with the sale in the United States of Defendants' Infringing Products, is

intended and has the effect of trading on Reynolds's reputation and causing dilution of the famous CAMEL Marks and the famous LUCKY Marks.

65. On information and belief, Defendants do not own any federal or state registrations or trademark applications for any mark that includes, in whole or in part, any of the CAMEL Marks or LUCKY Marks, and Defendants cannot assert any rights in the CAMEL Marks or LUCKY Marks that are prior to RII's first use, actual or constructive, of the CAMEL or LUCKY Marks, respectively.

66. Defendants' trademark dilution as herein alleged has injured and will continue to injure RII in that RII has suffered and will continue to suffer damage to its reputation and customer goodwill as a direct and proximate result of Defendants' illegal conduct, unless such unlawful conduct is enjoined by this Court. In addition, Defendants have been unjustly enriched by reason of their acts of trademark dilution in that they have achieved sales and profits, and the opportunity to earn future sales and profits, as a direct and proximate result of their illegal conduct.

67. RII is entitled to recover all damages sustained by Defendants' actions, all profits realized by Defendants through their unlawful use of the CAMEL Marks and LUCKY Marks, or colorable imitations thereof, in connection with the offering for sale and sale of liquid nicotine products or related products, and the costs of this action.

68. Defendants' actions have been willful and deliberate, entitling RII to recover treble damages and/or profits and an award of reasonable attorneys' fees against Defendants.

23

## FOURTH CLAIM FOR RELIEF
### (Unfair and Deceptive Trade Practices under N.C. Gen. Stat. § 75-1 *et seq.*)

69.     The allegations of the foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

70.     Defendants' conduct as alleged above is in commerce and affects commerce in the State of North Carolina.

71.     Defendants' conduct as alleged above constitutes unfair methods of competition and unfair and deceptive acts and practices in violation of N.C. Gen. Stat. § 75-1 *et seq.*

72.     Defendants' unfair methods of competition and their unfair and deceptive trade practices as alleged herein have injured RII in that RII has suffered damage to its reputation and customer goodwill as a direct and proximate result of Defendants' illegal conduct.  In addition, Defendants have been unjustly enriched by reason of their unfair methods of competition and unfair and deceptive trade practices in that they have achieved sales and profits, and the opportunity to earn future sales and profits, as a direct and proximate result of their illegal conduct.

73.     Defendants have willfully engaged in the acts and practices alleged above, justifying an award of attorneys' fees to RII pursuant to N.C. Gen. Stat. § 75-16.1.

## FIFTH CLAIM FOR RELIEF
### (New York Deceptive Acts and Practices)

74.     The allegations of the foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

24

75.    Defendants' conduct as alleged is in commerce and affects commerce in the State of New York.

76.    Defendants' conduct violates the New York deceptive acts and practices law, N.Y. Gen. Bus.Law § 349.

77.    Defendants' unauthorized use of the CAMEL Marks and the LUCKY Marks, or colorable imitations thereof, is a consumer-oriented act that was and is misleading in a material way as to the origin of Defendants' products that has caused injury to RII, in violation of the New York Consumer Fraud and Deceptive Business Practices Act, N.Y. Gen.Bus.Law § 349.  Defendants' conduct as alleged has caused and, unless restrained by this Court, will continue to cause, serious and irreparable injury to RII, for which RII has no adequate remedy at law.

## SIXTH CLAIM FOR RELIEF
### (New York Trademark Dilution)

78.    The allegations of the foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

79.    Defendants' conduct as alleged herein violates the New York injury to business reputation and dilution law, N.Y. Gen. Bus. § 360-*l*.

80.    As a result of the duration, extent, and geographic reach of RII's use of the CAMEL Marks and the LUCKY Marks, and advertising and publicity associated with the CAMEL Marks and the LUCKY Marks, the CAMEL Marks and the LUCKY Marks have achieved an extensive degree of distinctiveness and are famous trademarks.  The CAMEL Marks and the LUCKY Marks are widely recognized by the consuming public

25

as a designation of source of Reynolds's tobacco products. Defendants began using the CAMEL Marks and the LUCKY Marks, or colorable imitations thereof, in interstate and/or United States commerce, long after the CAMEL Marks and the LUCKY Marks became famous and distinctive.

81.     Because of the similarity of the marks, Defendants' use of the CAMEL Marks and the LUCKY Marks is likely to cause dilution by blurring by creating a likelihood of association with Reynolds's famous CAMEL Marks and the LUCKY Marks. Defendants' use is likely to impair the distinctiveness of Reynolds's famous CAMEL Marks and famous LUCKY Marks, in violation of the New York statute concerning injury to business reputation and dilution, N.Y. Gen. Bus. Law. § 360-*l*.

82.     These acts have caused, and unless restrained by this Court will continue to cause, serious and irreparable injury to RII, for which RII has no adequate remedy at law.

**SEVENTH CLAIM FOR RELIEF**
**(Common Law Trademark Infringement and Unfair Competition)**

83.     The allegations of the foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

84.     Defendants' conduct as alleged above constitutes trademark infringement and unfair competition in violation of the common law of the States of New York and North Carolina.

85.     Defendants' trademark infringement and unfair competition as alleged above has injured RII in that RII has suffered damage to its reputation and customer goodwill as a direct and proximate result of Defendants' illegal conduct. In addition,

Defendants have been unjustly enriched by reason of their trademark infringement and unfair competition in that Defendants have achieved sales and profits, and the opportunity to earn future sales and profits, as a direct and proximate result of their illegal conduct.

86.     Unless enjoined by this Court, Defendants' trademark infringement and unfair competition as herein alleged will continue to cause irreparable and inherently unquantifiable injury and harm to RII's business, reputation, and goodwill.

87.     Defendants' wrongful conduct as above alleged was accompanied by circumstances of willfulness and deliberate indifference to the rights of RII, warranting the assessment of punitive damages.

**WHEREFORE**, RII prays the Court as follows:

1.     That Defendants, their affiliates, officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them, be preliminarily and permanently enjoined from any and all further unauthorized promotion, marketing, advertising, sale, offering for sale, or distribution of products bearing the CAMEL Marks or the LUCKY Marks, or colorable imitations thereof, including without limitation Defendants' Infringing Products;

2.     That Defendants, their affiliates, officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them, be preliminarily and permanently enjoined from any unauthorized sale, offering for sale, or distribution of products bearing any trademark owned by RII, or any colorable imitations thereof;

3.      That RII have and recover of Defendants such actual damages as RII may

prove at trial;

4.      That Defendants account to RII for all of Defendants' profits derived as a

direct and proximate result of Defendants' unlawful conduct;

5.      That such damages and/or profits to which RII is entitled by trebled

pursuant to 15 U.S.C. § 1117 and N.C. Gen. Stat. § 75-16;

6.      That, in the alternative to treble damages and/or profits, RII have and

recover punitive damages of Defendants;

7.      That the costs of this action, including a reasonable attorneys' fee, be taxed

against Defendants; and

8.      That the Court grant RII such other and further relief as the Court may

deem just and proper.


This the 16th day of April, 2013.

                                        */s/ William M. Bryner*_____
                                        William M. Bryner, N.C. State Bar No. 23022
                                        Harris W. Henderson N.C. State Bar No. 43399
                                        KILPATRICK TOWNSEND & STOCKTON LLP
                                        1001 West Fourth Street
                                        Winston-Salem, NC 27101
                                        Telephone: 336-607-7300
                                        Facsimile: 336-607-7500
                                        wbryner@kilpatricktownsend.com
                                        hhenderson@kilpatrickstownsend.com

                                        *Attorneys for Plaintiff*
                                        Reynolds Innovations Inc.

US2008 4494033 1